UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LINDA OATIS                                         CIVIL ACTION NO. 20-cv-1014

VERSUS                                              MAGISTRATE JUDGE HORNSBY

RETZER GROUP INC, ET AL

# MEMORANDUM RULING

## Introduction

Linda Oatis ("Plaintiff") filed this slip and fall action against the owners of a McDonald's in Arcadia, Louisiana. Plaintiff alleges that she slipped on a floor that was wet from mopping but not properly marked with caution signs. Before the court is the defendants' Motion for Summary Judgment (Doc. 31) that argues the area was properly marked and, in any event, Plaintiff admits that she knew an employee was mopping in that area. For the reasons that follow, the motion is denied.

## Summary Judgment Evidence

Plaintiff, who was 66 at the time of the accident, has received social security disability benefits since the early 1990s based on limitations associated with a neck fusion surgery. In April 2019, she was driving alone from her home in Jackson, Mississippi to visit her daughter in Dallas, Texas. She stopped along the way to use the restroom in the McDonald's in Arcadia. She testified in her deposition that it was not raining when she stopped, and although it had rained some during her drive she did not remember that it rained when she was close to the McDonald's.

Plaintiff testified that she got out of her car, entered the restaurant, and walked to the ladies' room. Photos and video from the store indicate that it is a typical layout for a McDonald's. Plaintiff appeared to have entered from a door on the side of the building. If she had proceeded straight after walking through the door, she would have reached the order counter on her right. Instead, Plaintiff testified, she turned right upon entering the store, and she proceeded through a dining/hall area to the restrooms at the end/back of that area.

Plaintiff testified that she did not see a mat on the floor or a wet floor sign when she entered the store. She walked in, turned to the right, and walked to the restroom. When she departed, she intended to exit the store through the same door she entered, but she fell flat on her back "a distance from the door." Plaintiff and defense counsel had the following discussion about the fall:

> Q. Okay. So you walked out the bathroom, and you were going to exit out the same door that you came in?
>
> A. Yes.
>
> Q. Okay. As you were walking towards that door, you fell somewhere?
>
> A. In front of the door.
>
> Q. Okay. As you were walking towards the door, did you see a wet floor sign?
>
> A. No.
>
> Q. As you were walking towards the door before you fell, did you see any water on the floor?
>
> A. No.

Q. Did you see anything that could cause you to slip and fall before you fell?

A. I didn't noticed anything. I just ...

Q. And this was the same door that you had walked in previously?

A. Yes.

Q. Right?

A. Yes.

Q. And when you walked in, you didn't slip and fall; correct?

A. Correct.

Q. When you walked in, you didn't notice anything wet on the floor; did you?

A. No.

Q. What did you slip and fall in?

A. What did I -- Repeat that.

Q. What -- What caused you to slip and fall?

A. Let me think. It seemed like there was -- It was kind of slippery like when I came out.

Q. Okay. Do you know why it was slippery?

A. Go back. They were mopping the floor.

Q. You saw someone mopping the floor before you slipped and fell?

A. Yes.

Q. Were they mopping the exact spot that you slipped and fell in?

A. The floor was slippery. I -- Maybe they had -- I didn't see them mopping that particular spot, but there was -- it was slippery.

Q. Okay. But you saw someone mopping?

A. Yes.

Q. And where were they mopping?

A. They were mopping in the area that I had to walk.

Q. Okay. And you saw them mopping in the area you had to walk before you walked through it; correct?

A. I didn't walk through it. I tried to walk around it. I didn't go through it.

Q. Okay. So you saw them mopping?

A. Yes.

Q. And you -- You -- You thought, "That could be slippery"; right?

A. Yes.

Q. Okay. And you so you tried to mop around -- You tried to walk around the area that they were mopping; correct?

A. Yes.

Q. And as you tried to walk around it, you slipped and fell?

A. Yes.

Q. Okay. So … back to my original question. Do you know what you slipped and fell on?

A. No.

Q. Okay.

A. I fell on the floor.

Q. Well, do you know if what you slipped and fell in was water from the mopping?

A. Yes.

Q. Okay. And how do you know that it's water from the mopping?

A. It felt slippery. It felt -- It wasn't -- Because I remember walking, trying to be careful.

Q. All right. And you were trying to be careful because you know if someone's mopping, it could be wet; right?

A. Yes.

Q. Okay. But the spot that you slipped and fell in, you didn't see anyone mopping it?

A. They were -- I didn't see anyone mopping that particular spot.

Q. Uh-huh.

A. But it had been mopped.

Q. And how -- How do you know that it has been mopped?

A. Because that's the area they were mopping.

Q. Okay. So that's the area that they were mopping as you were approaching them?

A. Yes.

Q. Okay.

A. The area from the bathroom to the door.

Q. Okay. So you did see them mopping that area?

A. Yeah, they were mopping.

Q. Okay. The person that was mopping, was it a male or a female?

A. I don't remember.

Q. Do you know how long they had been mopping?

A. No.

Q. When you first walked out the bathroom door, though, you saw them mopping?

A. As I came out of the bathroom and I was walking toward the door, that's when I noticed the mopping.

Q. Okay.

A. They were not at the door mopping. I didn't see anyone at the bathroom door mopping. They were away from -- They were mopping away from the door.

Q. Okay. And because they were mopping, you knew that the floors could be wet; right?

A. Yes.

Q. So you stepped in a spot that was wet; correct?

A. It felt slippery.

Q. It felt slippery?

A. Yes.

Q. And so you assume it was wet?

A. Yes.

Q. Okay.

Later, the following exchange took place:

Q. Do you remember if there was a mat there when you walked in that day?

A. I don't remember.

> Q. Okay. In front of that door and the mat there's a wet floor sign. Do you -- Did you see a wet floor sign that day?
>
> A. No.
>
> Q. Okay. Do you recall if there was a wet floor sign that day?
>
> A. No.
>
> Q. Okay. But it doesn't matter, because you knew that they were mopping; right?
>
> A. I saw them mopping.
>
> Q. Right. So you --
>
> A. Yes.
>
> Q. -- knew the floor could be wet; right?
>
> A. Yes.
>
> Q. Okay. So you slipped and fell somewhere around where this wet floor sign would have been?
>
> A. (Witness examines photograph.) Almost where that wet sign is, look like, or in that area somewhere, like it -- that sign is in my way.
>
> Q. Okay.
>
> A. Yeah. Because it wasn't there. I didn't see no sign.
>
> Q. Right. But -- But you knew they were mopping; right?
>
> A. I saw someone. Yes.

After defense counsel completed his questions, Plaintiff's attorney revisited these matters:

> Q. -- you said that you did see an employee mopping some area of the store; is that -- is that correct?

Page **7** of **14**

> A. Yes.
>
> Q. But you didn't see them mopping the area directly in front of the entrance where you -- where you did fall; correct?
>
> A. Correct.
>
> Q. So -- So you weren't aware that that particular area had been mopped. Even though you had seen an employee mopping another portion of the store, you didn't see them directly in front --
>
> A. No.
>
> Q. -- of the door?
>
> MR. ANSEMAN: I'm just going to object to form and asked and answered.
>
> EXAMINATION BY MR. LEE:
>
> Q. And then, also, you did not see the -- a caution sign anywhere at any point in time as you were walking back towards the --
>
> A. No.

Defendants submit the declaration of Deivorin Walker, who was the general manager of the McDonald's on the day of the fall. He states: "On April 4, 2019, I saw a bright yellow 'wet floor' warning cone placed near the restroom and another near the front door." He adds that pictures attached as exhibits accurately reflect the condition and location of the cones on April 4, 2019. One of the photos shows a yellow cone, with a broom or mop on it, against the wall between the doors to the men's and women's restrooms.

A reasonable person might not perceive that cone as warning of the area being wet; it could as easily be perceived as being stored out of the way until needed. The second photo depicts the area near the door where Plaintiff fell. It shows a rather typical floor mat

Page **8** of **14**

inside the door and a yellow cone at the corner of the mat farthest away from the area Plaintiff would have traversed when returning from the restroom.

Mr. Walker also submits a two and a half minute video taken by the store's security system. The camera was positioned behind the service counter. It shows the area where employees stand behind the counter to take orders. There is an open doorway at the end of the service area, which is near the area where Plaintiff walked and fell. An employee carrying a mop is seen entering the service area (behind the counter) from the direction of the restrooms, and she began to mop the floor behind the service counter (not in a public area). She was standing in the doorway to the public area, mopping behind the counter, when Plaintiff walked by on her way to the exit door. Plaintiff was almost to the door when she began to fall. The view of Plaintiff is partially blocked by the service counter; she is visible only from the waist up at the time she began to fall, and she disappeared from view as she fell on her back.

It cannot be seen in the video whether there was a mat in front of the door, which is the area where she fell, nor can any warning cone be seen. But a few seconds later, an employee walked through the service area, bent over near the end of the service counter and picked up what is revealed to be a yellow warning cone. He appears to then place the cone close to where Plaintiff fell. It cannot be determined from the video whether the cone was "in service" on the floor before this, or whether it had been stored at the end of the service counter. The photo of the area of the fall shows a cone, but it was presumably taken after the accident and after the employee placed/moved the cone.

The record also includes an incident report completed by Plaintiff that indicates the cause of the injury was a "slippery floor." A Rule 30(b)(6) representative of the owner of the restaurant testified that it is policy to place a wet floor warning sign on the perimeter or edge of a wet area to warn a customer prior to them entering the wet floor area. The representative read from reports of two witnesses, presumably employees of the restaurant. One simply stated that a lady slipped and fell on the floor and that it was slippery. The other contained a similar description but added, "Caution signs were out. The floor was wet." The representative added that it is store policy to have mats in the doorways as a customer enters; the mat addresses wetness and dirt.

**Summary Judgment Burdens**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party makes such a showing, "[t]he non-moving party must then come forward with specific facts showing there is a genuine issue for trial." Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007). The court will "review evidence in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).

**Analysis**

Under Louisiana law, a merchant owes a duty to all persons who use its premises "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). Regardless of a merchant's affirmative duty to keep the

premises in a reasonably safe condition, a merchant is not the insurer of the safety of his patrons. Noel v. Target Corp. of Minn., 2007 WL 2572308, *1 (W.D. La. 2007). To impose liability on a merchant under the statute, the claimant has the burden of proving all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6(B).

Defendant does not contest that it created the condition, the wet floor, that is the alleged cause of the accident. The issue is whether, considering warning signs, Plaintiff's awareness of mopping in the store, and other factors, the condition presented an unreasonable risk of harm and that Defendant failed to exercise reasonable care.

In Melancon v. Popeye's Famous Fried Chicken, 59 So.3d 513 (La. App. 3rd Cir. 2011), the plaintiff slipped and fell on a wet floor at a Popeye's restaurant as she was leaving the establishment. Popeye's had placed two bright yellow "wet floor" signs in the restaurant, "one near the counter and the other at the entrance, both of which are readily visible to anyone entering the store." Id. at 515-16. When the plaintiff initially entered the Popeye's, she had walked directly past one of the signs. Id. at 516. As she left the counter to exit, she looked directly at a bright yellow mop bucket, walked past the other sign, and past an employee mopping the floor. Id. The Louisiana court held that "[j]urisprudence

has specifically found that mopped floors do not create an unreasonable risk of harm when the appropriate signage is used to warn patrons of the conditions of the floor." Id. Further, "Popeye's exercised reasonable care by placing two different 'wet floor' signs to alert customers that the floor had been mopped." Id.

The Melancon decision was cited in Foreman v. Circle K Stores, Inc., 766 Fed. Appx. 165 (5th Cir. 2019), which affirmed summary judgment for a merchant that placed appropriate signage throughout its store to warn customers of a wet floor, and the plaintiff passed at least three warning signs and an employee actively mopping before she fell. The Court stated that it was not critical that the plaintiff actually saw the signs. Her inattentiveness did not make the merchant negligent.

There is a factual dispute in this case as to whether appropriate warning signs were in place when Plaintiff fell. The summary judgment evidence must be construed in the light most favorable to Plaintiff, and she testified that she did not see any warning signs or a mat near the door. Defendants point to the photos and the video, but the video suggests that the only warning sign near the door was moved only seconds after the fall, and it may have been moved from an "out of service" storage area near the end of the counter. As noted above, the warning sign near the restrooms could easily and reasonably be viewed as in storage rather than serving as an active warning. In any event, that sign was quite a distance from where Plaintiff fell. After construing the evidence most favorably to Plaintiff, there is a genuine dispute of material fact as to whether warning signs were properly placed so as to warrant summary judgment for Defendants.

That leads to the next issue, which is whether Plaintiff's admitted awareness of mopping in the area defeats her claim. Defendants argue that, whether or not there were warning signs, Plaintiff admitted that she was aware of mopping and wet floors in the area, so she was aware of the danger just as much as she would have been had she seen warning signs. Plaintiff admits that she saw an employee mopping, and the video show her walk right past an employee who was mopping. But that employee was not mopping near the door where Plaintiff fell, and nothing in the video indicates that the employee had been mopping in that area when Plaintiff entered or attempted to leave the restaurant. Plaintiff testified that she was trying to be careful in the area where she saw mopping taking place, and she tried to walk around the area being mopped. But Plaintiff stated in response to questions from defense counsel and her own counsel that she never saw anyone mopping the spot where she actually fell. That spot was far enough removed from the area of the mopping seen in the video that Plaintiff's awareness does not necessarily defeat her claim that the merchant was at fault. Perhaps a jury would find that the merchant was not at fault, or that Plaintiff and the merchant share fault, but the court cannot grant a summary judgment and dismiss Plaintiff's claims based on her awareness of mopping in one part of the store when she fell in a different (although nearby) area of the store, and there is a genuine dispute regarding whether a warning cone was properly in place at the time of the fall. Accordingly, Defendant's Motion for Summary Judgment (Doc. 31) is denied.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 26th day of May, 2022.

Mark L. Hornsby
U.S. Magistrate Judge